IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


HUBERT WILLER,                                          07-CV-303-BR

               Plaintiff,                        OPINION AND ORDER

v.

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
a Municipal Corporation,

               Defendant.


ELIZABETH McKANNA
McKanna Bishop Joffe & Sullivan, LLP
1635 N. W. Johnson Street
Portland, OR 97209
(503) 226-6121

          Attorneys for Plaintiff

BRITNEY A. COLTON
JANA TORAN
Tri-County Metropolitan Transportation District of Oregon
4012 S. E. 17th Avenue
Portland, OR 97202
(503) 962-4832

KEITH M. GARZA
Law Offices of Keith M. Garza
15033 S.E. McLoughlin
Suite 312
Milwaukie, OR 97267
(503) 344-4766

      Attorneys for Defendant Tri-County Metropolitan
      Transportation District of Oregon (hereinafter referred
      to as Tri-Met)


BROWN, Judge.

    This matter comes before the Court on Defendant Tri-Met's Motion for Dismissal (#3) in which it moves to dismiss Plaintiff Hubert Willer's Claims One, Two, Four, and Six on the ground that Plaintiff served Defendant untimely under Oregon law, and, therefore, did not timely commence this action with respect to those four claims.  Defendant also moves to dismiss Claims Six and Seven on the ground that Plaintiff does not state a claim under the controlling statutes.[1]

    For the reasons that follow, the Court **DENIES** Defendant's Motion.


## BACKGROUND

    When considering a motion to dismiss, the facts are viewed in the light most favorable to the nonmoving party who, in this case, is Plaintiff.  *See Cooper v. Pickett*, 137 F.3d 616, 622

---

     [1] Defendant has not moved to dismiss Plaintiff's Claims Three or Five.

2 - OPINION AND ORDER

(9th Cir. 1998).  Thus, the Court states the following facts in
that light.

Plaintiff began working for Defendant in February 2000 in a
position that involved cleaning busses.  Plaintiff asserts he was
exposed to and infected by blood contaminated with Hepatitis C
Virus (HCV) while cleaning a bus during his first few days at
work.  Although he did not experience symptoms of the disease for
several months, he ultimately was diagnosed with HCV and took
medical leave "[a]s a safety measure."  Plaintiff informed his
supervisors about his condition at that point.  Plaintiff,
however, maintains he never authorized Defendant or his
supervisors to disclose his medical information to anyone else.

In 2001 Plaintiff filed an Oregon workers' compensation
claim related to his HCV.  Plaintiff asserts Defendant resented
Plaintiff's exercise of medical leave, "fought vigorously"
against his workers' compensation claim, and asked Plaintiff to
quit his employment.  Plaintiff, nonetheless, continued to work
for Defendant, and it appears Plaintiff's workers' compensation
claim was settled in July 2005.

During the week of August 9, 2005, Plaintiff cooked food on
an outdoor barbeque grill and shared some of it with coworkers.
On August 16, 2005, Plaintiff attended a meeting with several of
his coworkers at one of Defendant's bus barns.  Tom Neilson, one
of Defendant's managers, announced to everyone at the meeting

that Plaintiff had HCV and even pointed directly at Plaintiff during the meeting.  Neilson allegedly stated Defendant was concerned that Plaintiff might have exposed others to HCV by sharing food and told all of Defendant's employees in attendance that Defendant would pay for HCV testing.

Following the disclosure, Plaintiff asserts he was subjected to frequent harassment by coworkers.  Although he reported several incidents to Defendant, Plaintiff contends Defendant did not act to prevent or to lessen the harassment.  Moreover, one of Plaintiff's managers allegedly told Plaintiff that he should apply for a transfer out of the department as a means of ending the harassment.  As a result, Plaintiff asserts he suffered embarrassment, humiliation, ridicule, and hostility, which required him to take medical leave again for treatment of emotional distress.

On January 27, 2006, Plaintiff filed a formal complaint with the Oregon Bureau of Labor and Industry (BOLI) alleging Defendant retaliated against him for filing his workers' compensation claim and for exercising his statutory right to medical leave.  On September 25, 2006, BOLI issued Plaintiff a notice of his right to file a civil action against Defendant.

On December 19, 2006, Plaintiff's counsel sent a draft copy of a complaint to Defendant's General Counsel through both the United States mail and by facsimile.  On December 22, 2006,

4 - OPINION AND ORDER

Plaintiff's counsel filed a complaint in Multnomah County Circuit Court alleging the following claims against Defendant:  Claim One for injured worker discrimination in violation of Oregon Revised Statutes § 659A.040; Claim Two for whistleblower retaliation in violation of Oregon Revised Statutes § 659A.230; Claim Three for interference with Plaintiff's rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*; Claim Four for interference with Plaintiff's rights under the Oregon Family Leave Act (OFLA), Oregon Revised Statutes § 659A.150, *et seq.*; Claim Five for public disclosure of private facts in violation of Oregon common law; Claim Six for revealing confidential medical information in violation of Oregon Revised Statutes §§ 659A.112, 659A.136; and Claim Seven for revealing confidential medical information in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*

Plaintiff maintains his counsel spoke with Defendant's counsel by telephone in an attempt identify who could accept service of the summons and complaint on Defendant's behalf. Although these telephone conversations did not result in an agreement for someone to accept service, Plaintiff's counsel sent Defendant's General Counsel a copy of the complaint via email. This copy of the complaint, however, was not an exact copy of the filed complaint because it was unsigned and misdated.

On January 30, 2007, Plaintiff caused a process server to

deliver summons and a copy of the complaint to the office of Defendant's registered agent.  The process server left the documents with Susan McKay, who the server noted was the person apparently in charge of the office.  At the time, Defendant's registered agent was David Anxier.

On January 31, 2007, Plaintiff filed a copy of the summons with Multnomah County Circuit Court as proof of service.  This was Plaintiff's last act to effect service of process before Defendant removed the action from state court to federal court.

On March 1, 2007, approximately 29 days after Plaintiff filed his proof-of-service documents in Multnomah County Circuit Court, Defendant removed the action to this Court.  Defendant admits it removed this action as a "cautionary measure" on the thirtieth day "after learning that [P]laintiff attempted service on [Defendant]."  On March 8, 2007, Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

On May 23, 2007, the Court heard oral argument on Defendant's Motion.  At that time, the Court asked the parties for supplemental briefing concerning the jurisdictional effects of removal when service of process in state court might not have been proper.  Defendant filed its supplemental brief on June 4, 2007.

On June 8, 2007, a process server delivered copies of a Summons generated by this Court and a Notice of Removal

containing the original complaint to Tina J. Lowe, the person apparently in charge of the office of Defendant's registered agent. The documents were addressed to Jana Toran, Defendant's General Counsel, and Fred Hansen, Defendant's General Manager. On June 8, 2007, Plaintiff also mailed copies of the complaint and summons to Defendant at the office of its registered agent.

On June 11, 2007, Plaintiff filed his supplemental response, and the Court took the matter under advisement.

## STANDARDS

Dismissal under Federal Rule of Civil Procedure 12(b)(6) "for failure to state a claim is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). As noted, a court must limit its review to the contents of the complaint, take all allegations of material fact as true, and view the facts in the light most favorable to the nonmoving party. *Cooper*, 137 F.3d at 622.

A court should not dismiss a complaint, thus depriving the plaintiff of an opportunity to establish his or her claims at trial, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

7 – OPINION AND ORDER

him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In addition, if a court dismisses a claim pursuant to Rule 12(b)(6), the court should grant the plaintiff leave to amend unless the court determines the allegation of other facts consistent with the operative pleading could not possibly cure the deficiency. *Schreiber Distrib. Co. v. Serv-Well Furn. Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  *See also Reddy v. Litton Indus.*, 912 F.2d 291 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991).


## DISCUSSION

As noted, Defendant moves to dismiss Plaintiff's Claims One, Two, Four, and Six on the ground that Plaintiff did not timely commence this action within the meaning of Oregon Revised Statutes § 659A.875(2) because, according to Defendant, Plaintiff did not timely serve Defendant under either Oregon or federal law.  In the alternative, Defendant moves to dismiss Claims Six and Seven on the ground that Plaintiff does not state a claim under the relevant statutory provisions.

**I.  Defendant's Motion as to Claims One, Two, Four, and Six.**

**A.  Commencement of a Civil Action under Oregon Revised Statutes § 659A.875(2).**

As noted, Plaintiff filed a complaint with BOLI on January 27, 2006.  *See* Oregon Revised Statutes § 659A.820(1)(providing a right for any person who claims to be aggrieved by an unlawful

8 - OPINION AND ORDER

employment practice to file a BOLI complaint).  Under Oregon Revised Statutes § 659A.875(2), any person who has filed a BOLI complaint pursuant to § 659A.820 "must commence a civil action under ORS 659A.885 within 90 days after a 90-day notice is mailed."  The parties agree BOLI issued to Plaintiff on September 25, 2006, a 90-day notice of his right to file a civil action against Defendant.  Thus, the 90th day after Plaintiff's BOLI notice was December 26, 2006, and the Court notes Plaintiff filed his complaint in Multnomah County Circuit Court on December 22, 2006.  Moreover, under Oregon Revised Statutes § 12.020(2), if a plaintiff serves a summons and complaint in a civil action before the expiration of 60 days from the date the complaint was filed, service "relates back" and the action is deemed to be commenced as of the date the complaint was filed.  *See, e.g., Torre v. Brickey*, 278 F.3d 917, 919 (9th Cir. 2002)(under Oregon law, an action is "deemed" to be commenced on the date filed if service occurs within 60 days).

Defendant, nonetheless, contends Plaintiff did not timely "commence" this action in compliance with § 659A.875(2) because, according to Defendant, Plaintiff was required to file his complaint and to serve the summons and complaint on Defendant by December 26, 2006 (*i.e.*, within 90 days of his BOLI notice).  To support its position, Defendant relies on Oregon Revised Statutes § 30.275(9), which provides:

9 - OPINION AND ORDER

> Except as provided in ORS 12.120, 12.135 and
> 659A.875, but notwithstanding any other
> provision of ORS chapter 12 or other statute
> providing a limitation on the commencement of
> an action, an action arising from any act or
> omission of a public body or an officer,
> employee or agent of a public body within the
> scope of ORS 30.260 to 30.300 shall be
> commenced within two years after the alleged
> loss or injury.

Thus, Defendant maintains the "notwithstanding provision" in
§ 30.275(9) means the 60-day service relation-back period
provided by § 12.020(2) does not apply here and Plaintiff's
Claims One, Two, Four, and Six are time-barred.  Indeed,
Defendant emphasizes the Oregon Court of Appeals has held
§ 30.275(9) nullified the 60-day relation-back period provided
for by § 12.020; *i.e.*, an action against a public body must be
filed and served before the final day that a statute of
limitations runs in order to be timely commenced.  *See O'Brien v.
State of Oregon*, 104 Or. App. 1, 5 (1990).  *See also Lawson v.
Coos Co. Sch. Dist. #13*, 94 Or. App. 387, 390 (1988).

In *Baker v. City of Lakeside*, however, the Oregon Supreme
Court recently rejected an argument that § 12.020(2) did not
apply to circumstances similar to those in this case:

> Considering the text, context, and
> legislative history of ORS 30.275(9), we hold
> that the notwithstanding clause in ORS
> 30.275(9) applies only to those provisions of
> ORS chapter 12 and other statutes that
> provide a limitation on the commencement of
> an action.  The notwithstanding clause does
> not bar application of ORS 12.020 to OTCA
> claims.  Because plaintiff filed her

> complaint within two years of the accident
> and served the city within 60 days of filing
> her complaint, her complaint was timely under
> ORS 12.020(2).  The city's motion for summary
> judgment should have been denied.

SC S53925, 2007 WL 1844139, at *8 (Or., June 28, 2007).

This Court is bound to follow the Oregon Supreme Court's interpretation of Oregon law.  *See S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001)("When interpreting state law, we are bound by decisions of the state's highest court.").  Thus, the 60-day relation-back period provided by Oregon Revised Statutes § 12.020(2) applies in this case and, if Plaintiff effected service of process within 60 days after December 22, 2006 (the date he filed his complaint in state court), he "commenced" his action in a timely manner under Oregon law.

**B.    Timeliness of Service on Defendant.**

Plaintiff alleges he effected service on Defendant in compliance with state law between December 19, 2006, and January 31, 2007.  In the alternative, Plaintiff contends his June 8, 2007, delivery of a copy of his complaint and the Summons generated by this Court constituted effective service on Defendant under federal law.

**1.    Service of Process under Oregon Law.**

Oregon Rules of Civil Procedure 7 controls whether service was proper under Oregon law.  In *Baker v. Foy*, the Oregon

11 - OPINION AND ORDER

Supreme Court articulated a two-part test for determining the adequacy of service.  310 Or. 221, 228-29 (1990).  If a court determines the method used to effect service was permitted by Rule 7D(2), service is presumed adequate.  *Id.*  If the requirements of Rule 7D(2) are not met, then the court must consider whether the actual method of service is otherwise adequate under the reasonable-notice standard set forth in Rule 7D(1).  *Id.*  The court must examine the totality of the circumstances known to the plaintiff at the time and determine whether the actual method of service adequately provided the defendant with reasonable notice of the existence and pendency of the action against him.  *Hoeck v. Schwabe, Williamson & Wyatt*, 149 Or. App. 607, 617 (1997).

Plaintiff contends it served Defendant in compliance with Rule 7D(3)(b)(I), which allows a corporation or limited partnership to be served whenever a "clerk on duty in the office of a registered agent" is served.  For purposes of Rule 7D(1), however, Defendant is a municipal corporation rather than a corporation or limited partnership within the meaning of Rule 7D(3)(b)(I).  *See Haynes v. Tri-County Metro. Transp. Dist. of Or.*, 337 Or. 659, 665 n.5 (2004)(Defendant is "a municipal corporation of this state, and a public body, corporate and politic, exercising public power.  ORS 267.200.  In particular, it is a mass transit district, organized pursuant to ORS chapter

12 - OPINION AND ORDER

267 for the primary purpose of providing a mass transit system for the people of the district.")(internal citations omitted).

Rule 7D(3)(d) provides a public body may be served "by personal service or office service upon an officer, director, managing agent, or attorney thereof."  Plaintiff does not assert his efforts to serve Defendant between December 19, 2006, and January 31, 2007, satisfy the standards of Rule 7D(3)(d). Instead Plaintiff contends he effected "office service" on Defendant under Rule 7D(2)(c) on January 30, 2007, by causing the complaint and summons to be delivered to Susan McKay at the office of Defendant's registered agent.  To effect office service, a true copy of the complaint and summons must be left with the person apparently in charge, and, in addition, a true copy of the service documents must be mailed to the defendant "as soon as reasonably possible."  Or. R. Civ. P. 7D(2)(c).  Because Plaintiff did not follow up his January 30, 2007, "office service" by mailing a copy of the complaint and summons to Defendant, office service was not properly effected under Oregon law.  As a result, under *Baker v. Foy*, Plaintiff's efforts to serve Defendant had to be conducted in a manner reasonably calculated under all of the circumstances to apprise Defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and to defend.  *See* 310 Or. at 229.              In *Stull v. Hoke*, the plaintiff's process server

13 - OPINION AND ORDER

attempted to effect office service by leaving a copy of the summons and complaint for Antal, a defendant in the action, with a receptionist at Antal's office.  153 Or. App. 261, 265 (1998). The process server left, but he returned to Antal's office and learned Antal was reading the documents delivered earlier in the day.  *Id.*  Although the requirements of office service under Rule 7D(2)(c) were not satisfied because the plaintiff did not follow up the "office service" by mailing a copy of the complaint and summons to Antal, the Oregon Court of Appeals held the process server's actions were "reasonably calculated" to notify Antal of the pendency of the action and noted it was due to the process server's actions rather than "mere happenstance" that Antal was on notice of the action.  *Id.* at 267-68.  Thus, the court held the plaintiff had properly served Antal pursuant to Rule 7D(1). Id at 268.

In *Williams v. Jett*, a county sheriff delivered a complaint and summons to the defendant's office and left it with the person apparently in charge.  183 Or. App. 611, 613 (2000).  The sheriff then completed a return of service after approximately four days.  *Id.*  The defendant's attorney later sent the plaintiff a letter acknowledging receipt of the documents.  *Id.*  As in *Stull*, office service was not performed properly under Rule 7D(2)(c).  The court, however, noted when a examining whether service was proper under the totality of the

14 - OPINION AND ORDER

circumstances, the court must analyze the facts with a "camcorder video" approach over time rather than focusing on a mere "snapshot" at a single moment. *Id.* at 618. Based on the plaintiff's efforts to inform the defendant of the pendency of the action and defendant's follow-up letter acknowledging receipt of the documents, the court held the plaintiff's efforts were sufficient to constitute adequate notice to the defendant under Rule 7D(1). *Id.* at 620-22.

Here Plaintiff made a greater effort to inform Defendant of the pendency of the action against Defendant than the plaintiffs in either *Stull* or *Williams*. As noted, on December 19, 2006, Plaintiff sent a draft copy of the complaint to Defendant's counsel by United States mail and by facsimile. After the Complaint was filed on December 22, 2006, Plaintiff maintains he spoke to Defendant's counsel on the telephone to determine the person to serve. Then on January 26, 2007, Plaintiff emailed a copy of the complaint to Defendant's counsel. Even though the "copy" may not have been properly dated or signed, the copy, nevertheless, constituted an effort by Plaintiff to notify Defendant of this action. On January 30, 2007, a process server also delivered a copy of the complaint and summons to the person apparently in charge of the office of Defendant's registered agent. Moreover, Defendant removed this action on March 1, 2007, which was within 30 days of Plaintiff's

last effort to effect service on Defendant and within 30 days of
Defendant's apparent knowledge of Plaintiff's action against
Defendant.  Thus, the record indicates Defendant became aware of
this action because of Plaintiff's efforts rather than by "mere
happenstance." *See Stull*, 153 Or. App. at 268.

Accordingly, the Court concludes Plaintiff's efforts to
effect service on Defendant were reasonably calculated to inform
Defendant of the existence and pendency of this action and, in
fact, were successful in informing Defendant of this action.
Plaintiff, therefore, effected service on Defendant within the
meaning of Oregon Rule of Civil Procedure 7D(1).

### 2.    Service of Process under Federal Law.

Even if Plaintiff did not properly effect service under
Oregon law, however, the Court concludes Plaintiff effectively
served Defendant in accordance with 28 U.S.C. § 1448.

Section 1448 provides:

> In all cases removed from any State court to
> any district court of the United States in
> which any one or more of the defendants has
> not been served with process or in which the
> service has not been perfected prior to
> removal, or in which process served proves to
> be defective, such process or service may be
> completed or new process issued in the same
> manner as in cases originally filed in such
> district court.

Thus, even if a plaintiff does not properly serve a defendant
before the defendant removes the action from state court to
federal court, § 1448 contemplates service after removal under

16 - OPINION AND ORDER

the Federal Rules of Civil Procedure without affecting the federal court's jurisdiction. Moreover, the Ninth Circuit specifically has held § 1448 allows completion of service under the federal rules after removal in cases involving a single plaintiff and a single defendant as is the case here. *See Savarese v. Edrick Transfer & Storage, Inc.*, 513 F.2d 140, 141-44 (9th Cir. 1975)(in a case involving a single plaintiff and a single defendant, § 1448 allows completion of service after removal). Other circuits have reached the same conclusion. *See, e.g., Marshall v. Warwick*, 155 F.3d 1027, 1029 (8th Cir. 1998) (§ 1448 is applicable in a diversity case between a single South Dakota plaintiff and a single Minnesota defendant). *See also Richards v. Harper*, 864 F.2d 85, 87 (9th Cir. 1988)(when "the plaintiff has not served the defendant with process prior to removal, the district court has no power to complete the service. Rather, the court must issue new process pursuant to Fed. R. Civ. P. 4.").

If service of Defendant in state court was deficient, therefore, Defendant's removal on March 1, 2007, would have triggered § 1448, and the adequacy of service thereafter would be analyzed under Federal Rule of Civil Procedure 4. *See* 28 U.S.C. § 1448 (when § 1448 applies, "process or service may be completed or new process issued in the same manner as in cases originally

filed in [the federal] district court."). *See also* Fed. R. Civ.
P. 81(c)("These rules apply to civil actions removed to the
United States district courts from the state courts and govern
procedure after removal."). Removal also triggers the 120-day
period for Plaintiff to serve Defendant in accordance with
Federal Rule of Civil Procedure 4(m). *See, e.g., Cowen v. Am.
Med. Sys., Inc.*, 411 F. Supp. 2d 717, 721 (E.D. Mich 2006)(in "a
case removed from state court, the [120-day limit] begins to run
on the date of removal.").

Here Plaintiff also served Defendant by substituted
service at the office of its registered agent on June 8, 2007,
which is within 120 days from removal on March 1, 2007, and
completed that service with the required mailing of the summons
and complaint. Federal Rule of Civil Procedure 4(j)(2) provides
for service of process on a municipal corporation "by delivering
a copy of the summons and complaint to its chief executive
officer" or by serving the summons and complaint in a manner
prescribed by state law. Oregon Rule of Civil Procedure 7D(2)(c)
provides for office service by leaving a copy of service
documents at a defendant's office and following up by mailing a
copy of the service documents to the defendant as soon as
reasonably possible. Thus, the Court concludes Plaintiff
adequately effected service on Defendant under Federal Rule of
Civil Procedure 4(j)(2).

C.   **Summary.**

The Court concludes Defendant was properly and timely served in accordance with both Oregon and federal law.  Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's Claims One, Two, Four, and Six.

## II.  Defendant's Motion as to Claims Six and Seven.

Defendant also moves in the alternative to dismiss Claims Six and Seven for failure to state a claim against Defendant.  In Claims Six and Seven, Plaintiff asserts Defendant "failed to maintain the medical information [*i.e.*, Plaintiff's HCV status] provided to it by plaintiff as confidential" and, therefore, "subjected Plaintiff to discrimination" in violation of Oregon law and the federal ADA.

Oregon Revised Statutes § 659A.136 provides an employer, unless otherwise permitted under the statute, may not require an employee to submit to a medical examination, "may not make inquiries of an employee as to whether the employee is a disabled person, and may not make inquiries of an employee as to the nature or severity of any disability."  Under § 659A.112(2)(b), it is an unlawful employment practice to participate in an "arrangement or relationship" that subjects an otherwise qualified job applicant to discrimination prohibited by various statutes including § 659A.136.

The ADA provides a covered entity shall not require medical

examinations and shall not "make inquiries" as to the nature or severity of an employee's disability unless the examination or inquiry is job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4). An employee need not be a qualified individual with a disability to be covered by the medical examination and inquiry provisions of § 12112(d). *See Fredenburg v. Contra Costa Co. Dep't of Health Serv.*, 172 F.3d 1176, 1182 (9th Cir. 1999)("[P]laintiffs need not prove that they are qualified individuals with a disability in order to bring claims challenging the scope of medical examinations under the ADA."). The Court notes the Oregon Legislature has expressly stated Oregon Revised Statutes § 659A.112 through § 659A.139 are to "be construed to the extent possible in a manner consistent with any similar provisions of the federal Americans with Disabilities Act of 1990." Or. Rev. Stat. § 659A.139.

According to Defendant, it cannot be liable for discriminating against Plaintiff under Oregon law or the federal ADA because Plaintiff's HCV status was not confidential within the meaning of the statutes in light of the fact that Plaintiff voluntarily disclosed that information to Defendant. In particular, Defendant contends it could not have violated the statutes because it did not learn about Plaintiff's HCV status by requiring Plaintiff to submit to a medical examination or by making inquiries of Plaintiff as to his medical condition.

20 - OPINION AND ORDER

See Fredenburg, 172 F.3d at 1182.  See also Or. Rev. Stat.
§ 659A.133(3)(c)("the results of an examination authorized under
this section may only be used in the manner provided for" by
Oregon Revised Statutes §§ 659A.112 through 659A.139); 42 U.S.C.
§ 12112(d)(3)(B)(when an employment entrance examination is
authorized, collected information must be "treated as a
confidential medical record.").

     Plaintiff does not assert in his Complaint that Defendant
required Plaintiff to have a medical examination and thereafter
disclosed such protected information.  If Defendant did not learn
about Plaintiff's medical condition as the result of a required
medical examination, then Defendant must have learned about
Plaintiff's medical condition as the result of an "inquiry"
to be liable under Oregon Revised Statutes § 659A.133(3)(c) or
§ 12112(d)(3) of the ADA.

     The Ninth Circuit has not addressed what it means "to make
an inquiry" in this context.  Other circuits, however, have
analyzed the term as it appears in 42 U.S.C. § 12112(d).  In Cash
v. Smith, the record reflected the plaintiff "told [the
defendant] of her diabetes in confidence" but not as part of a
required medical examination or as the result of the defendant's
inquiry.  231 F.3d 1301, 1304 (11th Cir. 2000).  The Eleventh
Circuit held § 12112(d) was not relevant under these
circumstances because the plaintiff made a "voluntary disclosure"

to the defendant. *Id.* at 1307.

In *Doe v. United States Postal Service*, however, the District of Columbia Circuit distinguished *Smith* and found the employer in *Doe* made an "inquiry" when it threatened the employee plaintiff with discipline unless he completed a medical-leave form explaining the nature of his medical condition (he was HIV-positive). 317 F.3d 339, 344 (D.C. Cir. 2003). The *Doe* court concluded "[u]nder the circumstances of this case, we think Doe's submission of the FMLA form was clearly a response to an employer inquiry, and not a voluntary disclosure." *Id.*

As noted, Plaintiff does not allege in his Complaint that Defendant learned about Plaintiff's medical condition through a medical examination or an inquiry. Plaintiff alleges only that he told Defendant about his illness when he took medical leave in 2001 and that he revealed that information in part as a "safety measure." Significantly, Plaintiff does not indicate whether some event or act by Defendant prompted him to make his disclosure. Thus, although Plaintiff's allegations in his Complaint do not indicate whether Plaintiff's disclosure was casual as in *Cash* or, in effect, was "required" by his employer as in *Doe*, the current record fails to establish it is "beyond doubt" that Plaintiff cannot prove Claims Six and Seven. Accordingly, it is too early to tell whether Plaintiff's Claims Six and Seven will fail for lack of proof.

On this record, therefore, the Court denies Defendant's Motion to Dismiss Plaintiff's Claims Six and Seven for failure to state a claim with leave to Defendant to renew these arguments on a more fully developed record.

## **CONCLUSION**

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss (#3).

IT IS SO ORDERED.

DATED this 25th day of July, 2007.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


23 - OPINION AND ORDER