IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


HUBERT WILLER,                                    07-CV-303-BR

        Plaintiffs,                          OPINION AND ORDER

v.

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF
OREGON, d.b.a. TriMet, a
municipal corporation,

        Defendant.


**ELIZABETH McKANNA**
**CATHERINE A. HIGHET**
McKanna, Bishop, Joffe & Arms, LLP
1635 N.W. Johnson Street
Portland, OR 97209
(503) 226-6111

        Attorneys for Plaintiffs

**JANA TORAN**
TriMet
4012 S.E. 17th Street
Portland, OR 97202
(503) 962-5651

1  -  OPINION AND ORDER

**BRITNEY A. COLTON**
TriMet
710 N.E. Holladay Street
Portland, OR 97232
(503) 962-2470

**KEITH M. GARZA**
Law Office of Keith M. Garza
P.O. Box 68106
Oak Grove, OR 97268
(503) 344-4766

        Attorneys for Defendants


**BROWN, Judge.**

     This matter comes before the Court on Defendant Tri-County
Metropolitan Transportation District of Oregon's (TriMet) Motion
for Summary Judgment (#48).

     On May 22, 2008, the Court heard oral argument on
Defendant's Motion.  At that time, Plaintiff Hubert Willer's
counsel conceded Defendants' Motion as to Plaintiff's Claim Two
for whistleblower retaliation pursuant to Oregon Revised Statute
§ 659A.230, and, accordingly, the Court dismissed that claim with
prejudice.  The Court also granted in part and denied in part
Defendant's Motion to Strike (#79).  The Court concluded those
portions of Plaintiff's Affidavit and Concise Statement of
Material Facts in which Plaintiff states his personal conclusions
and beliefs regarding Defendant's intent or motivation were
inadmissible for the purpose of proving Defendant discriminated
against Plaintiff.  The Court also granted Defendant's Motion to

2   -   OPINION AND ORDER

the extent Plaintiff relies on the workers' compensation settlement negotiations or any offers to compromise as proof of Defendant's liability, but the Court denied Defendant's Motion to the extent Plaintiff relies on the fact that the negotiations took place in order to prove, among other things, knowledge on the part of Defendant or to show proximity in time.

After supplemental briefing by the parties for the purpose of clarifying the factual record on which Plaintiff relies, the Court took Defendant's Motion under advisement on June 27, 2008.

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment.


## BACKGROUND

The following facts are based on Plaintiff's chronological chart that sets out a statement of the facts, which are undisputed except when otherwise noted.

Defendant is a public, mass-transportation district that serves the greater Portland metropolitan area. Plaintiff began working for Defendant in February 2000 as a maintenance worker and cleaned Defendant's busses. In 2002 Defendant promoted Plaintiff to the position of diesel mechanic, and Plaintiff worked at three of Defendant's garages known as Center, Powell, and Merlo. Plaintiff's managers were Mike Grove at Powell, Bob Johnson at Merlo, and Tom Nielsen at Center.

Plaintiff asserts he was exposed to and infected by blood contaminated with Hepatitis C Virus (HCV) while cleaning a bus in April 2000.  Shortly after this exposure but while he was still unaware of his HCV infection, Plaintiff was involved in an automobile accident and took approved medical leave for related injuries from May 1, 2000, through early October 2000.  Plaintiff received a letter from Defendant on October 11, 2000, in which Defendant required him to provide a physician's certificate for all future absences and warned Plaintiff that he would not be allowed any unexcused absences until November 16, 2001 (designated as being "under the letter").  Defendant allowed Plaintiff 65 hours of excused time off due to illness during that period.

Plaintiff was diagnosed with HCV in late May 2001. Plaintiff immediately informed his training manager, Andrea Dobson, of his condition and reported it as a workplace injury because he believed he was infected while working for Defendant. Dobson instructed Plaintiff to advise one of his supervisors, Robert Brooks, of his condition and to submit a workers' compensation form.  On July 18, 2001, Plaintiff submitted the workers' compensation form in which he was required to describe the nature of his workplace injury.  Plaintiff listed Hepatitis C.  Plaintiff gave the form to Brooks and informed Brooks that he

4  -  OPINION AND ORDER

would likely miss some work due to the treatment of his
Hepatitis C.

On August 15, 2001, Plaintiff cut himself while working on
the engine of a bus and bled on some of his tools.  When one of
Plaintiff's senior mechanics, Ted Whitney, ordered Plaintiff to
allow him to use a tool that Plaintiff was working with,
Plaintiff informed Whitney that he had a "bloodborne disease."
Plaintiff could not remember whether he told Whitney the disease
was Hepatitis C.  Plaintiff asked Whitney not to disclose his
condition.

Later that day, Plaintiff's supervisors, Tom Nielsen and
Dean Hepburn, called him to a meeting with Nielsen, Hepburn, and
a union representative based on a complaint by Whitney that
Plaintiff had exposed him to a communicable disease.  At the
meeting, Nielsen asked Plaintiff to disclose his condition, which
Plaintiff did.  Nielsen gave Plaintiff oral and written warnings
for failing to disclose his condition before he cut himself and
instructed Plaintiff to notify his present and future supervisors
of his condition.  Plaintiff subsequently informed supervisors
Mike Grove and Ed Trimpler about his condition.  Plaintiff,
however, maintains he never authorized Defendant or its agents to
disclose his medical information to anyone else.

On October 27, 2003, Plaintiff filed a second workers'
compensation claim after he cut his finger on a urine-soaked bus

5   -  OPINION AND ORDER

seat.  Plaintiff sought compensation for the injury to his finger and for the psychological injury arising from another exposure to bodily fluids.  On March 28, 2004, Plaintiff filed a third workers' compensation claim after he touched a bloody sanitary napkin with an open sore on his hand while cleaning a bus. Plaintiff again sought compensation for the resulting physical and psychological injury.

Defendant denied each of Plaintiff's workers' compensation claims except for the injury to Plaintiff's finger alleged in his Claim Two.  Nielsen was aware of Plaintiff's three workers' compensation claims, but the parties dispute whether Nielsen played any role in processing those claims.  Although Nielsen's name and/or initials appear on two pieces of correspondence relating to Plaintiff's workers' compensation claims and medical-leave requests dated December 8, 2003, and April 9, 2004, Nielsen denies signing the documents and could not recall whether he received copies or notice of those particular claims.  A workers' compensation hearing was set for early May 2005, but the parties elected to pursue settlement negotiations that day instead of proceeding with a formal hearing.  Nielsen was present at the negotiations, and the parties reached a settlement.

On several occasions in 2004 and 2005, Plaintiff filed requests for medical leave due to treatments for his Hepatitis C pursuant to the Family and Medical Leave Act (FMLA), 29 U.S.C.

§ 2601, *et seq*. Nielsen processed several of Plaintiff's FMLA leave requests. On August 25, 2004, Nielsen issued a letter to Plaintiff in which he reprimanded Plaintiff for failing to provide the appropriate medical documentation for his absence from work on August 12, 2004. Nielsen warned Plaintiff that if he had another "non-occupational illness or accident," he would have to provide a physician's certificate before he would be allowed to return to work.

On September 1, 2004, Nielsen denied Plaintiff's requests for leave on August 12 and 13, 2004, on the ground that Plaintiff did not provide a physician's certificate. On September 3, 2004, Plaintiff responded with an appeal letter in which he alleged he had already provided the appropriate medical certification. With his appeal letter, Plaintiff enclosed several reports from his physician that reflect Plaintiff had medical testing on August 12 and 13, 2004, and on September 3 and 8, 2004, and that he was scheduled for further testing and surgery on September 13, 2004. On September 11, 2004, Defendant issued another letter to Plaintiff requesting medical certification for leave on August 12, September 8, and September 13, 2004. On September 22, 2004, and again on January 10, 2005, Plaintiff sent additional medical certifications regarding his absences on February 29, August 12, and September 13, 2004. On January 11, 2005, Defendant sent Plaintiff a letter approving Plaintiff's

FMLA leave for February 29, 2004; May 1, 2, and 16, 2004; August
12 and 13, 2004; and September 13 through October 5, 2004.  It
appears Plaintiff's subsequent requests for leave between January
and July 2005 were approved by Nielsen without incident or delay.

On August 14, 2005, Plaintiff cooked food on a barbecue
grill at Defendant's Powell garage during a company event and
shared some of the food with his coworkers.  The parties dispute
whether Plaintiff had a cut on his hand that was bandaged, but it
is undisputed that Plaintiff did not wear gloves while preparing
the food.  At about 10:00 p.m. that night, Nielsen received a
telephone call from a TriMet supervisor, Ed Trimpler, indicating
some employees, including Larry Comer, learned Plaintiff had
Hepatitis C and were angry about the fact that Plaintiff cooked
their food without gloves on.  Nielsen did not take any action at
that time because the crew had already closed Powell garage.

On August 16, 2005, Nielsen held a shift meeting with the
employees of the garage where Plaintiff worked.  Nielsen began
the meeting by pointing at Plaintiff and announcing to everyone
in attendance that Plaintiff had Hepatitis C.  Only three of the
employees at the shift meeting had attended the barbecue at
Powell garage.  Nielsen stated his concern that Plaintiff may
have exposed others to HCV by sharing food that he prepared
without gloves on, and Nielsen told those in attendance that
Defendant would pay for HCV testing if they wanted it.

8   -   OPINION AND ORDER

Defendant's Safety Manager, Tommye Gilbreath, also spoke at the meeting.  Gilbreath had contacted a public-health nurse before the meeting and learned there was not any risk of exposure to HCV through food preparation and that transmission of the virus required sexual contact or blood-to-blood exposure.  Gilbreath provided this information to the employees at the meeting, but she also offered them the opportunity to be tested.  Nielsen and Gilbreath observed Plaintiff was noticeably distraught and looked down at the floor during the meeting.  Plaintiff filed a workers' compensation claim that day and alleged the disclosure caused him emotional distress.  On November 21, 2007, the parties settled Plaintiff's claim for stress, anxiety, and depressive disorder allegedly arising from Defendant's disclosure.

After the disclosure, Plaintiff alleges he was subjected to stress and frequent harassment by coworkers who, among other things, glued his CD player shut, put a biohazard sticker on his toolbox, and placed his tools in plastic bags.  Moreover, Plaintiff alleges Gilbreath was responsible for new food-handling policies, which mandated, *inter alia*, advance notice to Defendant of all events where food would be served; food handlers or preparers to wear gloves; no employees with infectious diseases, illnesses, skin breaks, or infections to handle or to prepare food; meat and poultry products to be pre-cooked; and no food to be prepared off-site and brought in for any event.

9   -   OPINION AND ORDER

On January 27, 2006, Plaintiff filed a formal complaint with the Oregon Bureau of Labor and Industry (BOLI) in which he alleged Defendant retaliated against him for filing his workers' compensation claim and for exercising his statutory right to medical leave.  On September 25, 2006, BOLI issued Plaintiff a notice of his right to file a civil action against Defendant.

On December 22, 2006, Plaintiff's counsel filed a complaint in Multnomah County Circuit Court alleging the following claims against Defendant:  Claim One for injured-worker discrimination in violation of Oregon Revised Statute § 659A.040; Claim Two for whistleblower retaliation in violation of Oregon Revised Statute § 659A.230; Claim Three for interference with Plaintiff's rights under FMLA, 29 U.S.C. § 2601, *et seq.*; Claim Four for interference with Plaintiff's rights under the Oregon Family Leave Act (OFLA), Oregon Revised Statutes § 659A.150, *et seq.*; Claim Five for public disclosure of private facts in violation of Oregon common law; Claim Six for revealing confidential medical information in violation of Oregon Revised Statutes §§ 659A.112, 659A.136; and Claim Seven for revealing confidential medical information in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*  Defendant removed the matter to this Court on March 1, 2007.

Defendant filed a Motion to Dismiss on March 8, 2007.  On July 26, 2007, the Court issued an Opinion and Order denying

10  -  OPINION AND ORDER

Defendant's Motion.

On August 24, 2007, Defendant filed its Answer.

On February 15, 2008, Defendant filed a Motion for Summary
Judgment.  On March 24, 2008, Defendant filed a Motion to Strike.
As noted, at oral argument the Court granted in part and denied
in part Defendant's Motion to Strike and dismissed Plaintiff's
Claim Two with prejudice.  The Court also requested the parties
to file supplemental briefs to clarify the factual record on
which Plaintiff relies for his six remaining claims against
Defendant.  On June 3, 2008, Plaintiff filed his summary Chart
of Facts and his Supplemental Memorandum in Opposition to
Defendant's Motion for Summary Judgment.  Defendant filed its
supplemental Response on June 27, 2008.  The Court took the
matter under advisement at that time.

## **STANDARDS**

Federal Rule of Civil Procedure 56(c) authorizes summary
judgment if no genuine issue exists regarding any material fact
and the moving party is entitled to judgment as a matter of law.
The moving party must show the absence of an issue of material
fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th
Cir. 2005).  In response to a properly supported motion for
summary judgment, the nonmoving party must go beyond the
pleadings and show there is a genuine issue of material fact for

11  -  OPINION AND ORDER

trial.  *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id*.  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the

resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.


<u>**DISCUSSION**</u>

As noted, Plaintiff conceded Defendant's Motion at oral argument as to his Claim Two for whistleblower retaliation. Thus, Defendant's Motion as to each of Plaintiff's six remaining claims is now before the Court.

**I.   Claim One:  Injured-Worker Discrimination.**

Plaintiff contends Defendant unlawfully discriminated against him in violation of Oregon Revised Statute § 659.040 after Plaintiff invoked his rights under the Oregon workers' compensation system.  Defendant, however, contends Plaintiff has not met his burden to establish a *prima facie* case of discrimination because Plaintiff has not shown Defendant discriminated against him as to the tenure, terms, or conditions of his employment on the basis of his invocation of workers' compensation rights.

**A.   The Law.**

Oregon Revised Statute § 659A.040(1) provides:

> It is an unlawful employment practice
> for an employer to discriminate against
> a worker with respect to hire or tenure
> or any term or condition of employment
> because the worker has applied for
> benefits or invoked or utilized the
> procedures provided for in ORS chapter

13  -  OPINION AND ORDER

656 or has given testimony under the
provisions of those laws.

To establish a *prima facie* case for discrimination under
§ 659A.040, Plaintiff must show (1) he invoked his rights under
the workers' compensation system; (2) he was discriminated
against in the tenure, terms, or conditions of his employment;
and (3) his employer discriminated against him in the tenure or
terms of employment because he invoked his rights under the
workers' compensation system. *Williams v. Freightliner, L.L.C.*,
196 Or. App. 83, 90 (2004).

**B.   Analysis.**

Defendant does not dispute Plaintiff has satisfied the first
element by invoking his rights under the Oregon workers'
compensation system.  Defendant, however, contends Plaintiff has
not satisfied elements two and three.  For example, Plaintiff
does not contend he was terminated, demoted, denied a promotion,
or reprimanded as a result of his invocation of the Oregon
workers' compensation laws.  Even though Plaintiff acknowledges
those acts are the most common discriminatory acts raised
pursuant to § 659A.040, Plaintiff maintains Defendant
discriminated against him by disclosing his medical condition to
his coworkers and by permitting the hostile treatment of
Plaintiff by his coworkers, which Plaintiff contends are both
actionable discrimination under § 659A.040.

Neither party identifies any authority under Oregon law that

14  -  OPINION AND ORDER

interprets the terms "with respect to hire or tenure or any
term or condition of employment" in the context of § 659A.040.
Although, as Defendant notes, the Oregon Legislature did not
expressly provide that federal law would control the
interpretation of § 659A.040,[1] Plaintiff analogizes to federal
law to support his broad interpretation of § 659A.040.  Specifi-
cally, Plaintiff relies on *Burlington Northern and Santa Fe
Railway Co. v. White*, 548 U.S. 53 (2006), to support his
contention that Defendant's alleged retaliatory disclosure of
Plaintiff's medical condition and Defendant's failure to address
the resulting coworker hostility exhibited toward Plaintiff is
sufficient to constitute discrimination in the "terms or
conditions of [Plaintiff's] employment" under the second prong
required to establish a *prima facie* case under § 659A.040.

In *White*, the Supreme Court granted *certiorari* to resolve
competing interpretations among circuit courts as to what
constitutes an actionable act of discrimination and/or
retaliation under Title VII.  *Id.* at 56-57.  The Supreme Court
addresses the scope of the "anti-discrimination" provision in

---

[1] Defendant contends the Oregon Legislature did not intend
federal law to control the interpretation of § 659A.040 as it
did, for example, in OFLA.  Or. Rev. Stat. § 659A.186(2)(OFLA
"shall be construed to the extent possible in a manner that is
consistent with any similar provisions of the federal Family and
Medical Leave Act of 1993.").  The Court agrees.  Nevertheless,
the Court considers Plaintiff's analogy to federal law as part of
its analysis, particularly in light of the fact that there is not
any Oregon authority that interprets § 659A.040.

Title VII at 42 U.S.C. § 2000e-2(a) and the "anti-retaliation"
provision at 42 U.S.C. § 2000e-3(a). *Id.* The Court found the
anti-retaliation provision prohibits an employer from engaging in
or supporting "any practice" not permitted by Title VII and
broadens the protection of that provision beyond adverse
employment-related actions by employers; *i.e.*, the actions
prohibited by an employer under the anti-retaliation provision of
Title VII are not limited to those that "are related to
employment or occur at the workplace." *Id.* at 56-57. Thus, the
Supreme Court held the anti-retaliation provision covers
"employer actions that would have been materially adverse to a
reasonable employee or job applicant," including any action that
would be harmful to the point that a reasonable worker might be
dissuaded from making or supporting a discrimination charge. *Id.*
In contrast, the Court noted the anti-discrimination provision
makes it unlawful for an employer to "fail or refuse to hire or
to discharge any individual, or otherwise to discriminate against
any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of . . . race,
color, religion, sex, or national origin." *Id.* at 62 (citing 42
U.S.C. § 2000e-2(a)). The Court distinguished the two provisions
as follows:

> The . . . words in the substantive
> provision–"hire," "discharge," "compensation,
> terms, conditions, or privileges of
> employment," "employment opportunities," and

> "status as an employee"-explicitly limit the
> scope of that provision to actions that
> affect employment or alter the conditions of
> the workplace. No such limiting words appear
> in the anti-retaliation provision.

*Id.*

The Oregon Legislature used language in § 659A.040 similar to the language of the Title VII anti-discrimination provision: The Oregon statute prohibits discrimination "with respect to hire or tenure or any term or condition of employment" on the basis of a worker's invocation of his rights under Oregon Revised Statute Chapter 636. As noted, the Supreme Court in *White* held that similar language limited the scope of actionable conduct under the anti-discrimination provision to acts that "affect employment or alter the conditions of the workplace." *Id.* The Supreme Court's reasoning in *White*, therefore, appears to contradict Plaintiff's assertion that § 659A.040 applies to retaliatory conduct by an employer even when the conduct may not affect an injured worker's "tenure" or "terms or conditions of employment." Thus, this Court does not find persuasive Plaintiff's position that the broad interpretation applied by the Supreme Court to the Title VII anti-retaliation provision should also be applied to § 659A.040.

To further support his position, however, Plaintiff also identifies a single decision in which this Court referred to a claim under § 659A.040 as a "workers' compensation *retaliation*

case." *See Kotelnikov v. Portland Habilitation Ctr.*, 545 F. Supp. 2d 1137, 1140 (D. Or. 2008)(emphasis added). Plaintiff asserts this reference establishes that § 659A.040 applies to a broader range of employer actions. In *Kotelnikov*, however, the second element of the statute was not at issue because the employer had discharged the plaintiff, which is the type of retaliatory conduct that is prohibited in § 659A.040. *Id.* at 1139. The court's use of the term "retaliation" instead of "discrimnation" in *Kotelnikov*, therefore, does not suggest explicitly or implicitly that different proof may establish a *prima facie* case of injured-worker discrimination. In short, the court's analysis in *Kotelnikov* also is not helpful to Plaintiff and is not determinative of the scope of the statute. Thus, Plaintiff does not provide persuasive authority for broadening the application of § 659A.040 to include acts that do not affect Plaintiff "with respect to hire or tenure or any term or condition of employment."

As noted, Plaintiff also contends Defendant's alleged failure to address coworkers' hostile actions against Plaintiff after the disclosure of his medical condition constitutes discrimination by Defendant. Defendant, however, contends hostility on the part of a plaintiff's coworkers is not attributable to the employer and, therefore, is not actionable.

For an employer to be liable for harassing conduct by a

plaintiff's coworkers, the plaintiff must prove the employer knew
or should have known about the harassing conduct and did not take
adequate steps to address it. *McGinest v. GTE Serv. Corp.*, 360
F.3d 1103, 1119 (9th Cir. 2004). Defendant points out that
Plaintiff brought the alleged harassing conduct to the attention
of Geoff Winn, one of his supervisors, and the harassment ceased
to Plaintiff's satisfaction shortly thereafter. Plaintiff
did not dispute this fact in either his initial Response to
Defendant's Motion or in his supplemental brief. Thus, the Court
concludes on this record that Defendant "took adequate steps to
address such conduct," and the Court does not attribute the
actions of Plaintiff's coworkers to Defendant. *Id.*

For these reasons, the Court concludes Plaintiff has not
satisfied his burden as to the second element required to
establish a *prima facie* case of discrimination because he failed
to show that Defendant took an adverse employment-related action
against him "with respect to hire or tenure or any term or
condition of [his] employment" pursuant to § 659A.040. The
Court, therefore, need not address Defendant's remaining
arguments as to the third element.

Accordingly, the Court grants Defendant's Motion for Summary
Judgment as to Plaintiff's Claim One.

## II.  Claims Three and Four:  Interference with FMLA and OFLA rights.

In Claims Three and Four, Plaintiff contends Defendant

19  -  OPINION AND ORDER

interfered with and discouraged Plaintiff's use of his right to
medical leave under FMLA and OFLA by disclosing his medical
condition to his coworkers, forcing Plaintiff to apply repeatedly
for medical leave after he had provided appropriate documen-
tation, and delaying the approval of Plaintiff's medical leave.[2]
Plaintiff does not, however, contend he was denied the right to
take the medical leave to which he was entitled.  Nevertheless,
Plaintiff seeks recovery of damages for the economic losses he
allegedly suffered as a result of Defendant's alleged violation
of FMLA and OFLA.

Oregon Revised Statute § 659A.186(2) provides OFLA "shall be
construed to the extent possible in a manner that is consistent
with any similar provisions of the federal Family and Medical
Leave Act of 1993."  The Court, therefore, addresses Plaintiff's
Third and Fourth Claims simultaneously.

**A.   The Law.**

Section 2615(a)(1) of FMLA provides for a claim for
interference with an employee's exercise of FMLA rights:

(a) Interference with rights

(1) Exercise of rights

It shall be unlawful for any

---

[2] In his supplemental brief, Plaintiff limited Claims Three
and Four to interference with his FMLA and OFLA rights and does
not pursue a discrimination action in these Claims.  Thus,
Plaintiff no longer relies on coworker hostility as a factual
basis for Claims Three and Four.

> employer to interfere with, restrain, or
> deny the exercise of or the attempt to
> exercise, any right provided under this
> subchapter.

In *Xin Liu v. Amway Corp.*, the Ninth Circuit noted in an action

for interference with an employee's exercise of his FMLA rights,

> the statutory and regulatory language
> makes clear that where an employee is
> subjected to negative consequences
> simply because he has used FMLA leave,
> the employer has interfered with the
> employees FMLA rights under 29 C.F.R.
> § 825.220(a)(1).

347 F.3d 1125, 1136 (9th Cir. 2003)(internal citation omitted).

*See also Bachelder v. Am. West. Airlines, Inc.*, 259 F.3d 1112,

1124 (9th Cir. 2001)("engaging in activity that tends to chill"

an employee's exercise of his right to medical leave violates

§ 2615(a)(1) of FMLA.)  Federal regulations define interference

with FMLA rights as including any acts by an employer that

discourage the use of medical leave.  29 C.F.R. § 825.220(b).

The regulation provides:

> Any violations of the Act or of these
> regulations constitute interfering with,
> restraining, or denying the exercise of
> rights provided by the Act. "Interfering
> with" the exercise of an employee's
> rights would include, for example, not
> only refusing to authorize FMLA leave,
> but *discouraging* an employee from using
> such leave.

*Id.* (emphasis added).  See *also Edgar v. JAC Prod., Inc.*, 443

F.3d 501, 507-08 (6th Cir. 2006).

**B.    Analysis.**

The parties do not dispute Plaintiff engaged in protected activity by invoking his rights to medical leave under FMLA and OFLA.  Defendant, however, contends Plaintiff has not provided sufficient evidence to support his claim that Defendant interfered with Plaintiff's rights to medical leave.  Even if Plaintiff has a cognizable claim, Defendant also maintains Plaintiff has not suffered any actual monetary losses that are recoverable under FMLA or OFLA.

**1.    Evidence of Interference.**

Plaintiff contends Defendant is not entitled to summary judgment because three genuine issues of material fact exist as to Defendant's alleged interference with or discourage-ment of Plaintiff's use of medical leave under FMLA and OFLA: (1) whether Nielsen disclosed Plaintiff's medical condition to his coworkers because of Plaintiff's use of medical leave, (2) whether Nielsen required Plaintiff to repeatedly file leave-related documents, and (3) whether Defendant delayed approval of Plaintiff's leave requests.

As noted, Nielsen disclosed Plaintiff had Hepatitis C to a group of Plaintiff's coworkers on August 16, 2005, which was two days after Plaintiff had cooked and shared food at a company barbecue.  Plaintiff contends Nielsen's disclosure of Plaintiff's medical condition "subjected [Plaintiff] to negative consequences

22  -  OPINION AND ORDER

simply because he has used FMLA leave." *Xin Liu*, 347 F.3d at 1136. Nielsen testified at his deposition that he disclosed Plaintiff's condition out of concern for the well-being of Plaintiff's coworkers and that he only became aware after the meeting that there was not any risk of transferring the disease through food preparation. Nevertheless, an email sent by Nielsen to Gilbreath, TriMet's safety manager, and others on the morning of August 16, 2005, contradicts Nielsen's deposition testimony. In that email, Nielsen indicated he understood before the meeting that HCV could only be transferred by an exchange of body fluids and that "Hep C only lives for a short time outside the body."

Plaintiff also contends Nielsen discouraged Plaintiff's use of medical leave by repeatedly forcing Plaintiff to apply for medical leave even though he had provided the appropriate medical certifications and that he had to wait nearly a year in some instances to get approval for medical leave. For example, Plaintiff's medical-leave request for February 29, 2004, was not approved by Defendant until January 11, 2005. It also appears on this record that Nielsen required Plaintiff to submit duplicative physician certificates for several of Plaintiff's medical-leave requests. Plaintiff also points out that he applied for medical leave several times between February 2005 and the August 16, 2005, meeting and contends the proximity in time raises an inference that Nielsen's disclosure of Plaintiff's medical

23  -  OPINION AND ORDER

condition to coworkers was intended to discourage Plaintiff's use
of medical leave.  Defendant notes several medical-leave requests
in 2005 were timely approved.  The fact that Defendant may have
complied with FMLA as to some of Plaintiff's requests, however,
does not preclude the possibility that a reasonable juror might
find Defendant's conduct, at some point, discouraged Plaintiff's
use of medical leave in violation of FMLA and OFLA.

Defendant does not dispute the facts underlying Plaintiff's
argument, but Defendant asserts it did not intend to discourage
Plaintiff's use of medical leave by disclosing Plaintiff's
Hepatitis C, by requiring duplicative medical certifications, or
by delaying Plaintiff's leave requests.  As Plaintiff notes,
however, Nielsen testified in his deposition that he would prefer
Plaintiff was no longer an employee of Defendant based on
Plaintiff's absenteeism and because of Nielsen's opinion that
Plaintiff was a below-average mechanic.  In any event, Defendant
argues Plaintiff has not established that genuine issues of
material fact exist as to whether Defendant interfered with or
discouraged Plaintiff's invocation of his rights under FMLA and
OFLA.

Viewing the facts in the light most favorable to Plaintiff,
the Court concludes a reasonable jury could infer Defendant
disclosed Plaintiff's medical condition to his coworkers, delayed
approval of Plaintiff's medical leave, and/or made Plaintiff file

duplicative leave requests at least in part to discourage or to chill his use of medical leave.

      **2.  Remedies.**

      Defendant contends even if there are facts sufficient to give rise to an inference that Defendant interfered with Plaintiff's exercise of his FMLA and OFLA rights, Plaintiff cannot recover any damages related to this claim because Plaintiff seeks only noneconomic damages for emotional distress and FMLA provides only for economic damages.

      29 U.S.C. § 2617(a) provides a plaintiff may recover:

> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
>
> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee.

      Plaintiff concedes the statute does not provide for the recovery of damages for emotional distress.  The parties, however, dispute whether Plaintiff may seek "actual monetary losses" to compensate for Plaintiff's alleged economic losses resulting from his emotional distress caused by Defendant's

25  -  OPINION AND ORDER

violation of FMLA.  In his Notice of Supplemental Authority Relevant to Defendant's Motion for Summary Judgment, Plaintiff notes the recent opinion in *Farrell v. Tri-County Metropolitan Transportation District of Oregon* in which the Ninth Circuit rejected TriMet's contention that a jury improperly awarded the plaintiff damages for emotional distress.  530 F.3d 1023, 10254 (9th Cir. 2008).  The court explained the distinction between damages for emotional distress, which the statute does not provide for, and a plaintiff's monetary losses resulting from the emotional distress caused by the defendant's violation of the statute:

> It is well-settled that the FMLA, by its terms, only provides for compensatory damages and . . . that recovery for emotional distress is not available under the FMLA.
>
> Here, the jury's verdict reflects that Farrell was not awarded FMLA damages for emotional distress, but rather "*for days of work that he missed* because of stress or other mental problems resulting from the wrongful denial of FMLA leave."  . . . Unlike emotional distress, which requires valuating an intangible, . . . this calculation can easily be quantified, in accordance with Section 2617, as an "actual monetary loss [ ],"  . . . by determining the wages Farrell would have earned on the days he could have worked, but was unable to do so because of TriMet's violation.
>
>               \* \* \*
>
> [T]he jury's verdict was limited to wages actually lost as a result of TriMet's FMLA violation, and thus, the award was not "a back-door means of recovery for psychic

injuries."

*Id.* at 1025 (internal quotation and citation omitted; emphasis in original).  Accordingly, the Court concludes Plaintiff cannot seek noneconomic damages for any emotional distress that he suffered as a result of Defendant's alleged violations of FMLA and OFLA.  Plaintiff, however, may seek economic damages which are a "direct result" of FMLA and OFLA violations by Defendant. *See* 29 U.S.C. § 2617(a)(1)(A).

In his Complaint, Plaintiff also seeks equitable relief in the form of a declaration from this Court that Defendant violated FMLA and OFLA.  Defendant contends Plaintiff is not entitled to such a declaration because Plaintiff remains employed by Defendant and Defendant did not deny Plaintiff any leave or pay to which he was entitled.  Thus, Defendant contends even if Plaintiff establishes that Defendant violated FMLA and OFLA, equitable relief is not appropriate because Plaintiff was not injured by any such violation.  The Court notes FMLA provides for "such equitable relief as may be appropriate, including employment, reinstatement, and promotion."  29 U.S.C. § 2617(a)(1)(B).  OFLA similarly provides for "injunctive relief and such other relief as may be appropriate, including but not limited to reinstatement or the hiring of employees with or without back pay."  Or. Rev. Stat. § 659A.885(1).

As noted, the Court has concluded a genuine issue of

material fact exists as to whether Defendant interfered with Plaintiff's exercise of his rights under FMLA and OFLA.  At this stage of the proceedings, it is premature to address whether and what type of equitable relief might be warranted.

For these reasons, the Court denies Defendant's Motion as to Plaintiff's Claims Three and Four.

**III. Claim Five:  Public Disclosure of Private Facts.**

Plaintiff also contends Defendant publicly disclosed private facts about Plaintiff's medical condition to his coworkers in such a manner as to cause him embarrassment and a loss of dignity and self-esteem in violation of Oregon common law.

Under Oregon common law, the public disclosure of private facts of another is actionable in tort when the tortfeasor's conduct is "wrongful."  *Marleau v. Trucking Exch.*, 333 Or. 82, 93 (2001).  *See also Anderson v. Fisher Broadcasting Co.*, 300 Or. 452, 469 (1986).

Defendant does not dispute in its Motion, its Reply, nor its Response to Plaintiff's supplemental brief that Plaintiff has provided sufficient evidence of each of the elements of a common-law claim for public disclosure of private facts.  The only basis on which Defendant moves for summary judgment as to Plaintiff's Claim Five is that Plaintiff's remedy in tort is preempted by the exclusive remedy of workers' compensation.

Oregon's workers' compensation system embodies a compromise

between employers and employees:  Employees are provided with coverage for workplace injuries, and, in exchange, employers' liability for work-related injuries is limited because workers' compensation is the exclusive remedy for workplace injuries.  Or. Rev. Stat. § 656.018.  *See also Moustachetti v. State*, 122 Or. App. 598, 602 (1993).  Thus, an employer's liability for negligence is limited to the compensation required under the workers' compensation scheme.  Plaintiff, however, notes the workers' compensation statute includes an exception for intentional torts:  "If injury or death results to a worker from the deliberate intention of the employer of the worker to produce such injury or death, the worker . . . [has a] cause for action against the employer . . . for damages over the amount payable under [the workers' compensation] statutes."  Or. Rev. Stat. § 656.156(2).  According to Plaintiff, Defendant deliberately intended to cause him harm by disclosing his medical condition to coworkers, and, therefore, Plaintiff is entitled to relief under both workers' compensation and tort.  Although Defendant acknowledges the exception, Defendant contends Plaintiff has not identified any evidence in the record to establish that Defendant deliberately intended to harm Plaintiff.

Defendant points out that Oregon courts have narrowly construed the exception to the exclusivity of the workers' compensation remedy.  Defendant notes, for example, the Oregon

Court of Appeals decision in *Davis v. U.S. Employers Council, Inc.*, in which the court held the exception requires "the injury be deliberate, in the sense that the employer has had an opportunity to weigh the consequences and to make a conscious choice among possible courses of action, *and also that the employer specifically intends to produce injury to someone.*"  147 Or. App. 164, 172 (1997)(internal quotation omitted; emphasis in original).  The court held the "deliberate intent" standard is higher than that of ordinary intentional torts.  *Id.*  "*It is not enough for the employer to act with conscious indifference* to whether its actions will produce injury; it must intend to produce injury."  *Id.* (quoting *Lusk v. Monaco Motor Homes, Inc.*, 97 Or. App. 182, 186-88 (1989))(emphasis in original).  In other words, the employer must have specific intent to cause harm, and it is not sufficient that the defendant act carelessly or recklessly "however gross."  *Lusk v. Monaco Motor Homes, Inc.*, 97 Or. App. 182, 187 (1989).

     Plaintiff, nevertheless, contends the record contains sufficient evidence to permit a reasonable jury to infer that Defendant acted with deliberate intent to cause Plaintiff harm. As noted, Nielsen attested he did not take any steps before the meeting on August 16, 2005, to learn about Hepatitis C or the transmission of the disease and did not contact Plaintiff to determine whether he had cooked the food with an open sore on his

30  -  OPINION AND ORDER

finger.  In fact, Nielsen left that task to Gilbreath,
Defendant's safety manager.  Despite the fact that Gilbreath
learned before the meeting that Hepatitis C could not be
transmitted through the preparation of food, Nielsen,
nonetheless, disclosed Plaintiff's medical condition to
coworkers.  In addition, even though Nielsen sent an email to
Gilbreath and others the morning before the meeting that
indicates he believed HCV could only be transferred by an
exchange of bodily fluids, Nielsen testified at his deposition
that he thought at the time of the meeting it was possible
Plaintiff could have transmitted HCV to his coworkers through
food preparation.  Nielsen also sent an email to fellow managers
Grove and Trimpler after the meeting in which Nielsen noted
Plaintiff was distraught during and after the meeting.  Nielsen
stated, however, that he  was not inclined to pay Plaintiff for
the half day he took off following the meeting because Plaintiff
"should know all the issues surrounding this illness and should
have taken appropriate measures to . . . not subject[] anyone to
Hep C."  As noted, Nielsen also testified at his deposition that
he wished Plaintiff was no longer a TriMet employee because of
his absenteeism and because he was a below-average mechanic in
Nielsen's opinion.

Defendant contends Nielsen's conduct was perhaps negligent
or even reckless and does not deny Defendant could have handled

the situation better.  Defendant, however, maintains these facts are not sufficient to give rise to an inference that Nielsen had specific intent to harm Plaintiff.  Defendant points out that Plaintiff himself does not characterize Defendant's actions in his Complaint or his deposition testimony as intended to inflict harm, but merely as "cavalier," "inappropriate," and "unreasonable."

The Court notes Nielsen, nevertheless, might have taken any number of minimally burdensome steps to determine whether the disclosure of Plaintiff's medical condition was necessary, including speaking with Plaintiff or Gilbreath regarding the risk of exposure.  Nielsen also might have disclosed Plaintiff's condition only to the three employees who were at the barbecue. Instead Nielsen testified he left the task of determining the risk of exposure to Gilbreath and announced Plaintiff's condition to a large group of Plaintiff's coworkers before he learned from Gilbreath that HCV could not be passed by means of food preparation.  It appears, however, from the email Nielsen sent the morning of the meeting that Nielsen actually made the disclosure despite his knowledge that Plaintiff could not transfer HCV through food preparation.  On this record, therefore, the Court cannot rule out the possibility that a reasonable jury could find that Nielsen's disclosure of Plaintiff's medical condition was "deliberate"; *i.e.*, that

Nielsen made a "conscious choice among possible courses of
action" to disclose Plaintiff's medical condition to a large
group of Plaintiff's coworkers. *See Davis*, 147 Or. App. at 172.

The Court also notes "specific intent to injure may be
inferred from the circumstances." *Lusk*, 92 Or. App. at 189.
Nielsen's testimony that he disclosed Plaintiff's medical
condition out of his concern for the safety of Defendant's
employees appears to be contradicted by Nielsen's explanation of
his understanding before the meeting of how HCV is transmitted.
On summary judgment, the Court is not required to accept
Defendant's explanation. *See Lusk*, 97 Or. App. at 189.  Thus,
viewing the facts in the light most favorable to Plaintiff, the
Court concludes a reasonable jury could infer from the following
facts that Nielsen's explanation is not credible and that he
had the specific intent to harm Plaintiff:  (1) Nielsen attested
he did not make an effort to gather facts regarding the potential
exposure of Plaintiff's coworkers to HCV, (2) Nielsen made the
disclosure even though the employee he assigned to the task
of researching the facts was present at the meeting and had
information contrary to Nielsen's stated understanding,
(3) Nielsen disclosed Plaintiff's condition to many more
employees than the three employees who attended the barbecue, and
(4) Nielsen attested he wished Plaintiff was not employed by
Defendant.  A jury also might reasonably infer Defendant had

33  -  OPINION AND ORDER

specific intent to harm Plaintiff from Nielsen's email that
followed the meeting in which he indicated he was inclined not to
pay Plaintiff for the time he took off after the meeting because,
in effect, Plaintiff should have known better than to cook food
without gloves under the circumstances.  "Summary judgment is
particularly inappropriate where the inferences which the parties
seek to have drawn deal with questions of motive, intent and
subjective feelings and reactions."  *Id.*

Accordingly, the Court denies Defendant's Motion as to
Plaintiff's Claim Five.

## IV. Claims Six and Seven:  Disclosure of Confidential Medical Information.

Plaintiff contends Defendant disclosed his confidential
medical information in violation of the ADA, 42 U.S.C. § 12101,
*et seq.,* and in violation of Oregon Revised Statute § 659A.136.

The Court notes the Oregon Legislature has expressly stated
Oregon Revised Statutes § 659A.112 through § 659A.139 are to "be
construed to the extent possible in a manner consistent with any
similar provisions of the federal Americans with Disabilities Act
of 1990."  Or. Rev. Stat. § 659A.139.  As with Plaintiff's claims
under FMLA and OFLA, therefore, the Court addresses Plaintiff's
Claims Six and Seven simultaneously.

Section § 12112(d) of the ADA provides protection to
employees from disclosures of medical information that an
employer obtains from mandatory health screenings or as a result

34  -  OPINION AND ORDER

of employer inquiries.  Defendant does not dispute it disclosed
Plaintiff's medical condition.  Defendant, however, maintains
Plaintiff is not entitled to protection under the ADA because he
voluntarily disclosed his medical condition to Defendant before
Defendant made the disclosure.  Plaintiff, however, alleges he
disclosed his medical condition to Defendant in response to an
"inquiry" by Defendant.

    The Ninth Circuit has not addressed what it means "to make
an inquiry."  Other circuits, however, have analyzed the term as
it appears in 42 U.S.C. § 12112(d).  For example, in *Cash v.
Smith*, the record reflected the plaintiff "told [the defendant]
of her diabetes in confidence," but her disclosure was not part
of a required medical examination or the result of the
defendant's inquiry even though the plaintiff disclosed her
condition while she was in the process of securing FMLA leave.
231 F.3d 1301, 1304 (11th Cir. 2000).  The Eleventh Circuit held
the confidentiality provisions of § 12112(d) were not triggered
under these circumstances because the plaintiff made a "voluntary
disclosure" to the defendant.  *Id.* at 1307.  In *Doe v. United
States Postal Service*, however, the District of Columbia Circuit
Court distinguished *Cash* and found the employer in *Doe* made an
"inquiry" when it threatened the employee plaintiff with
discipline unless he completed a medical-leave form explaining
the nature of his medical condition (he was HIV positive).  317

35  -  OPINION AND ORDER

F.3d 339, 344 (D.C. Cir. 2003).  The *Doe* court concluded "[u]nder the circumstances of this case, we think Doe's submission of the FMLA form was clearly a response to an employer inquiry, and not a voluntary disclosure."  Id.

Thus, the issue before the Court is whether Plaintiff's disclosure was voluntary as in *Cash*, and, therefore, whether Plaintiff is entitled to protection under the ADA or whether Plaintiff's disclosure was, in effect, "required" by his employer as in *Doe*.

Defendant contends Plaintiff voluntarily disclosed his medical condition and maintains Plaintiff's disclosures were not in response to inquiries by Defendant.  Plaintiff, however, points out it is undisputed that Defendant made several inquiries into Plaintiff's medical condition related to his workers' compensation claims and medical-leave requests pursuant to FMLA and OFLA.  *See Doe*, 317 F.3d at 344.

As noted, when Plaintiff sought information about how to report what he thought was a workplace injury in May 2001, Plaintiff disclosed he had Hepatitis C to Dobson, a training manager.  Even though Plaintiff attested he believed he was required to disclose the nature of his workplace injury to Dobson, Plaintiff's belief is not determinative as to whether Defendant "required" him to provide that information.  Plaintiff points out, however, in Defendant's letter of October 11, 2000,

(placing Plaintiff "under the letter"), Defendant required
Plaintiff to provide a physician's certificate to support his
absences from work.  Plaintiff's approach of Dobson, however, was
to inquire about the procedure for filing a workers' compensation
claim rather than to provide a physician's certificate to prove
the legitimacy of an absence.  Although Plaintiff may have been
required ultimately to disclose his condition on his workers'
compensation form, which he did when he submitted that form to
Brooks, he was not required to tell Dobson that he had Hepatitis
C in order to determine the process for filing a workers'
compensation claim.

In addition, Plaintiff's disclosure to Whitney, a coworker,
was not the result of an employer inquiry.  Plaintiff told
Whitney that he had a "bloodborne disease" when Whitney sought to
use a tool that had some of Plaintiff's blood on it.  Although
Plaintiff asked Whitney not to disclose his condition, Whitney
informed Nielsen about Plaintiff's condition, which, in turn, led
to the meeting in which Plaintiff disclosed his Hepatitis C to
Nielsen and Hepburn.

As in *Cash*, the fact that Plaintiff was in the midst of
invoking his statutory rights does not transform a voluntary
disclosure into one that is the result of an employer inquiry.
231 F.3d 1304-06.  Neither disclosure to Dobson or Whitney was
the result of an employer inquiry because Plaintiff was not

37  -  OPINION AND ORDER

required nor asked to make such disclosures in either instance.

For these reasons, the Court concludes on this record that Plaintiff disclosed his medical condition to Defendant voluntarily.  The Court, therefore, grants Defendant's Motion for Summary Judgment as to Plaintiff's Claims Six and Seven.


## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment (#48) as follows:

1. **GRANTS** Defendant's Motion as to Plaintiff's Claim One for injured-worker discrimination under Oregon Revised Statute § 659A.040;

2. **GRANTS** Defendant's Motion as to Plaintiff's Claim Two for whistleblower retaliation under Oregon Revised Statute § 659A.230;

**3.** **DENIES** Defendant's Motion as to Plaintiff's Claims Three and Four for interference with Plaintiff's rights under FMLA and OFLA;

4. **DENIES** Defendant's Motion as to Plaintiff's Claim Five for public disclosure of private facts under Oregon common law; and

5. **GRANTS** Defendant's Motion as to Plaintiff's Sixth and Seventh Claims under the ADA and Oregon Revised Statute § 659A.136 for disclosure of confidential medical

information.

IT IS SO ORDERED.

DATED this 19th day of August, 2008.


                                        /s/ Anna J. Brown

                              _____
                              ANNA J. BROWN
                              United States District Judge